# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRETT DULANEY,  )
  )
      Plaintiff,  )
  ) Civil Action No. 2:13-cv-1240
v.  ) Judge Schwab
  ) **ELECTRONICALLY FILED**
CAROLYN W. COLVIN,  )
Commissioner of Social Security,  )
  )
      Defendant.  )

## MEMORANDUM OPINION

**I.    INTRODUCTION**

Brett Michael Dulaney ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security, ("Defendant" or "Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). This matter comes before the Court upon cross-motions for summary judgment. (ECF Nos. 9, 11). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendant's Motion for Summary Judgment will be GRANTED.

**II.    PROCEDURAL HISTORY**

Plaintiff filed for SSI with the Social Security Administration on September 2, 2010, claiming an inability to work beginning on December 31, 2004, due to major depressive disorder

and generalized anxiety disorder. (R. at 71, 127).[1] On January 7, 2011, Plaintiff's application was denied and on March 27, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 72). A hearing was held before the ALJ, Daniel F. Cusick, on March 13, 2012. (R. at 28). The ALJ denied Plaintiff's claim for SSI in a decision dated March 27, 2012. (R. at 19). Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied on June 26, 2013, at which time the ALJ's decision became the final decision of the Commissioner. (R. at 1). On August 29, 2013, Plaintiff filed her complaint in this Court. (ECF No. 3). Defendant filed an answer on November 8, 2013. (ECF No. 6). These pending cross motions for summary judgment followed. (ECF Nos. 9, 11).

### III. STATEMENT OF THE CASE

#### a. The ALJ's decision

In his decision denying SSI to Plaintiff, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 2, 2010, the application date;
2. The claimant has the following severe impairments: major depressive disorder and anxiety disorder;
3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels except he must: be limited to one or two step tasks; entail only simple, routine and repetitive tasks, involving only simple, work-related decisions with few, if any, work place changes; and entail no interaction with the public and only occasional interaction with co-workers with no tandem tasks;
5. The claimant is capable of performing past relevant work as a dishwasher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity;
6. The claimant has not been under a disability, as defined in the Social Security Act, since September 2, 2010, the date the application was filed.

---

[1] Citations to ECF Nos. 7-210, the Record, *hereinafter*, "R. at __."

(R. at 11-18).

## b. Mental health evidence

On December 22, 2010, Dr. Lisa Lewis, Ph. D., completed a consultative psychological examination of Plaintiff. (R. at 15, 334-340). Plaintiff told Dr. Lewis that he was fired from his position at a grocery store in 2004 for stealing and was now unable to find work because he told the truth about that incident on job applications. (R. at 16, 200, 335). Mental status findings from that exam were unremarkable. (R. at 15, 337). Plaintiff made good eye contact and was: neatly groomed; polite; and well mannered. (R. 15, 334). He had never experienced hallucinations, illusions, depersonalization, or derealization while not under the influence. (R. at 15, 337). His thought processes were linear, coherent, goal-oriented, and of a normal rate. (*Id.*). He did not have any language impairment. (*Id.*). Plaintiff's affect was congruent with his alleged depressed and anxious mood. (*Id.*). He scored a 28/30 on a "Mini-Mental Status Exam," which was within normal limits, and was judged to be of low average intelligence. (*Id.*). Dr. Lewis noted that she possessed few of Plaintiff's treatment records but diagnosed him with the following: major depressive disorder, moderate; generalized anxiety disorder, and polysubstance dependence, in early full remission. (R. at 334, 337). Plaintiff was assessed with a single GAF score of 48. (*Id.*). Finally, Dr. Lewis opined that Plaintiff's prognosis was fair with ongoing treatment and sobriety. (R. at 15, 338).

On January 5, 2011, Dr. Arlene Rattan, Ph. D., completed a psychiatric review technique. (R. at 16-17, 345-357). Dr. Rattan diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and polysubstance dependence in early full remission. (R. at 16-17, 348, 350, 353). Plaintiff was assessed with the following limitations: moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration,

3

persistence, and pace. (R. at 355). His residual functional capacity ("RFC") was assessed by Dr. Rattan as follows:

> The claimant's ability to understand and remember complex or detailed instruction is limited, however, he would be expected to understand and remember simple one and two-step instructions. He can perform simple, routine, repetitive work in a stable environment. He can make simple decisions. He is capable of asking simple questions and accepting instruction. Moreover, he can sustain an ordinary routine without special supervision.

(R. at 343).

In completing her report, Dr. Rattan reviewed Plaintiff's psychiatric treatment records and found Plaintiff to be only partially credible. (*Id.*). Dr. Rattan accorded only partial weight to Dr. Lewis' report, finding that it was inconsistent with the record and relied heavily on Plaintiff's subjective complaints rather than objective findings. (*Id.*). Further, Dr. Rattan found that the marked limitation assessed by Dr. Lewis was inconsistent with Dr. Lewis' finding that Plaintiff had a mental status exam within normal limits and a linear, coherent, and goal-oriented thought process. (R. at 15-16, 334-340, 343). Dr. Lewis' findings that Plaintiff was able to follow simple instruction, write and read simple sentences, and successfully perform serial 7s were also found inconsistent with that limitation. (*Id.*). Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment. (R. at 344). The ALJ concluded that Dr. Rattan's assessment was supported by the record evidence and accorded it great weight. (R. at 16-17).

Plaintiff received treatment at Centerville Clinic between November 2010 and January 2012. (R. at 15-16, 371-400). On November 3, 2010, Plaintiff reported difficulty concentrating as well as anxiety and guilt stemming from legal, financial, and substance abuse issues. (R. at 15-16, 372). Plaintiff's subjective complaints were unchanged on December 22, 2010, at which time he reported that he owed $796.00 in fines as a result of being placed on probation. (R. at

4

15-16, 374). He told his therapist that his parents had agreed to pay the fines for him. (*Id.*). Plaintiff mentioned the possibility joining the military or moving to Arkansas to start an online business like his brother. (*Id.*). On January 6, 2011, Plaintiff told his therapist that his mood was "good." (R. at 15-16, 375). Though he remained concerned about being unemployed, he reported that his parents had paid the $796.00 dollars in fines and that he was no longer on probation. (*Id.*). At his next visit on January 20, 2011, Plaintiff related further improvements in his depression and anxiety. (R. at 15-16, 376). His symptoms continued to improve on February 8, 2011, when Plaintiff stated that he was "doing well and really [had] nothing to say." (R. at 15-16, 377). He again stated that he was "doing well" on October 20, 2011 but complained of stress stemming from a custody dispute over his child. (R. at 15-16, 378). On November 16, 2011, he described his mood as "much better" despite stress related to the custody dispute. (R. at 15-16, 378). On November 30, 2011 and January 4, 2012, Plaintiff reported that his depressive symptoms had increased. (R. at 15-16, 380-381). He maintained appropriate eye contact and had a normal affect. (*Id.*).

Dr. Burton Singerman, M.D., completed a mental RFC questionnaire on February 14, 2012. (R. at 401-404). Plaintiff's limitations were assessed based on the following scale: "unlimited or very good;" "limited but satisfactory;" "seriously limited, but not precluded;"[2] "unable to meet competitive standards;"[3] and "no useful ability to function."[4] (R. at 403-404). In numerous categories, Plaintiff was assessed with "limited but satisfactory" and "seriously

---

[2] "*Seriously limited, but not precluded* means ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." (R. at 403).

[3] "*Unable to meet competitive standards* means your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (*Id.*).

[4] "*No useful ability to function*, an extreme limitation, means your patient cannot perform this activity in a regular work setting." (*Id.*).

5

limited but not precluded" limitations. (*Id.*). None of Plaintiff's limitations were ranked as more severe than "seriously limited but not precluded." (*Id.*). Dr. Singerman found the following: Plaintiff did not have a low IQ or reduced intellectual functioning; Plaintiff's impairments had lasted or could be expected to last at least twelve months; his impairments would result in him being absent from work about three days per month; he was not a malingerer; and substance abuse did not contribute to any of the aforementioned limitations. (R. at 404). The ALJ granted little weight to Dr. Singerman's opinion, concluding that Dr. Singerman's findings suggested that Plaintiff was able to perform work in excess of that defined in the ALJ's RFC. (R. at 17). Further, Dr. Singerman's finding that Plaintiff was seriously limited in his ability to understand and remember very short and simple instructions was inconsistent with his finding that Plaintiff had a satisfactory ability to carry out those same instructions. (R. at 17, 403).

## IV. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

6

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated

rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of

this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

V. DISCUSSION

On appeal before this Court, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to discuss a Global Assessment of Functioning[5] ("GAF") score and did not explain the weight given to Dr. Lewis' report. (ECF No. 10 at 5). Defendant counters that the ALJ's decision was supported by substantial evidence and argues the following: the ALJ properly considered Dr. Lewis' report in the context of the entire record; the report was of little probative value; and the ALJ was not required to discuss the GAF score. (ECF No. 12 at 11-14). For the reasons that follow, the Court concurs with Defendant that the ALJ's decision included a sufficient discussion of the probative evidence in the record and was supported by substantial evidence.

---

[5] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000). An individual with a GAF score of 91 – 100 exhibits "[s]uperior functioning in a wide range of activities" and "no symptoms;" of 81 – 90 exhibits few, if any, symptoms and "good functioning in all areas," is "interested and involved in a wide range of activities," is "socially effective," is "generally satisfied with life," and experiences no more than "everyday problems or concerns;" of 71 – 80, may exhibit "transient and expectable reactions to psychosocial stressors" and "no more than slight impairment in social, occupational, or school functioning;" of 61 – 70 may have "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning, but generally functioning pretty well" and "has some meaningful interpersonal relationships;" of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 41 – 50 may have "[s]erious symptoms (e.g., suicidal ideation …)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 31 – 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood;" of 21 – 30 may be "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., … suicidal preoccupation)" or "inability to function in almost all areas;" of 11 – 20 may have "[s]ome danger of hurting self or others" or "occasionally fails to maintain minimal personal hygiene" or "gross impairment in communication;" of 1 – 10 may have "[p]ersistent danger of severely hurting self or others" or "persistent inability to maintain minimal personal hygiene" or "serious suicidal act with clear expectation of death." *Id.*

9

### a. The ALJ's decision to grant significant weight to Dr. Rattan's opinion was supported by substantial evidence.

The United States Court of Appeals for the Third Circuit has held that the ALJ "must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "[A]llegations of pain or other subjective symptoms must be consistent with objective medical evidence." *Burnett v. Comm'r of Soc. Sec. Admin*, 220 F.3d 112, 122 (3d Cir. 2000). When medical findings do not provide support for the existence of additional impairment or functional limitations, there is simply no need for an ALJ to discuss said evidence. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004). In order for the opinion of a treating physician, to be granted greater weight, it must be "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). It is appropriate for the ALJ to discredit a medical opinion which is inconsistent with the source's own medical notation. *Rimel v. Astrue*, 521 F. App'x 57, 59 (3d Cir. 2013).

The ALJ's decision to grant significant weight to Dr. Rattan's opinion was supported by substantial evidence. The moderate limitations assessed in Dr. Rattan's opinion were consistent with treatment notes from Centerville Clinic. (R. at 15-16, 372-381). The limitations assessed by Dr. Lewis are not consistent with those notes. (R. at 15-17). Plaintiff's anxiety and depression appeared to stem from his legal problems. (R. at 15, 372-381). After Plaintiff's parents paid his legal fine, he exhibited improvements and reported his mood as "good." (R. at 15-16, 375). Treatment notes indicate that Plaintiff's symptoms continued to improve until a custody dispute occurred. (R. at 15-16, 378). Despite reporting increased depression during that time, he indicated that he was seeking employment in order to increase his visitation rights with his son. (R. at 16, 380). These notes are consistent with Dr. Rattan's finding that Plaintiff is able

10

to meet the basic mental demands of competitive work on a sustained basis. (R. at 16, 343, 380). Accordingly, the ALJ's decision to grant significant weight to Dr. Rattan's report was supported by substantial evidence. (R. at 16-17).

### b. The ALJ provided a sufficient discussion of Dr. Lewis' opinion

Plaintiff argues that the ALJ failed to discuss and accord weight to Dr. Lewis' opinion. (ECF No. 10 at 5). Defendant responds that Dr. Lewis' opinion was of little probative value and the ALJ properly found it inconsistent with the record evidence. (ECF No. 12 at 12). Further, Defendant argues that the ALJ impliedly assigned little weight to the opinion when he granted great weight to the opinion of Dr. Rattan. (ECF No. 12 at 14). The Court agrees with Defendant. The ALJ evaluated Dr. Lewis' report in light of the entire record and provided an explanation sufficient for this Court to determine that his decision was supported by substantial evidence. (R. at 15-16).

As Plaintiff correctly notes, the ALJ may not reject probative evidence for no reason or the wrong reason and must provide an explanation for why such evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 706-707 (3d Cir. 1981). Contrary to Plaintiff's assertion, however, the ALJ did express his reason for discounting Dr. Lewis' opinion. (R. at 15). The ALJ found the limitations assessed therein inconsistent with the report's objective findings. (*Id.*). The ALJ explained:

> [W]hile the claimant has a history of mental illness … the available medical evidence indicates these impairments are not intractable conditions that prevent the claimant form performing simple routine and repetitive tasks as outlined in the above residual functional capacity. Indeed, in December 2010, the claimant underwent a consultative examination with Dr. Lisa Lewis, Ph. D.

(*Id.*). The ALJ then provided a summary of Dr. Lewis' aforementioned objective findings: a linear, coherent, goal-oriented thought process; a mental status exam in normal limits; and a fair

prognosis with continued treatment. (R. at 15-16, 334-340, 343). The ALJ properly concluded that these findings were inconsistent with the severity of the limitations assessed by Dr. Lewis. (R. at 15). *See Rimel*, 521 F. App'x at 59.

Moreover, by granting significant weight to the opinion of Dr. Rattan, which accorded only partial weight to Dr. Lewis' opinion, the ALJ implicitly granted less weight to Dr. Lewis' report. (R. at 16-17, 343). *See Stover v. Colvin*, Civ. A. No. 12-531, 2013 WL 2446469, at *2 (W.D. Pa. June 5, 2013) (affirming the ALJ's implicit grant of less weight to a report when he found a different report to be "more consistent with the totality of the medical record"). The ALJ's conclusion that Dr. Lewis' objective findings did not support a determination of disability, along with the ALJ's adoption of Dr. Rattan's opinion granting little weight to Dr. Lewis' assessment, were sufficient to demonstrate the basis for the ALJ's decision and the weight he accorded to the evidence. (R. at 15-17).

### c. The ALJ did not err by omitting a discussion of Plaintiff's GAF score

Plaintiff argues that the ALJ erred by failing to address the GAF score of 48 assessed in the Dr. Lewis' opinion. (ECF No. 10 at 5). Again, the Court disagrees.

"An ALJ's failure to include a GAF score in his or her discussion is considered to be harmless error where a claimant has not explained how the GAF score would have itself satisfied the requirements for disability in light of potentially contradictory evidence on record." *Bracciodieta-Nelson v. Commr. of Soc. Sec.*, 782 F. Supp. 2d 152, 165 (W.D. Pa. 2011). Here, Plaintiff makes the conclusory statement that if the limitations and GAF assessed by Dr. Lewis had been given significant weight, then a finding of disability would have been made. (ECF No. 10 at 6). Plaintiff has, however, failed to make a showing that the GAF score alone would have satisfied the requirements for disability.

Plaintiff cites *Bonani v. Astrue*, Civ. A. No. 10-329, 2010 WL 5481551, at 6* (W.D. Pa. Oct. 15, 2010) in support of his argument that the ALJ erred by failing to address the aforementioned GAF score. (ECF No. 10 at 9). In *Bonani*, the ALJ failed to discuss the medical evidence of record and did not mention a number of low GAF scores. *Id.* at *6. The court found that the ALJ had "cherry picked" evidence supporting his conclusion while ignoring contrary evidence. *Id.* at *8. In the instant case, the ALJ discussed all of the medical evidence of record and concluded that it did not support a finding of disability. (R. at 15-17). Thus, Plaintiff's reliance on *Bonani* is not appropriate.

Furthermore, the Court notes that the Social Security Administration has expressly declined to endorse the use of the GAF scale. Fed. Reg. 50746, 50764-65 (August 21, 2000). "A GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings," 66 Fed.Reg. 50764–5 (2000), and "a GAF score of 45, if credited, would not require a finding of disability." *Gilroy v. Astrue*, 351 F. App'x. 714, 715 (3d Cir. 2009). *See also Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 535 (3d Cir 2011) (holding that the ALJ's failure to reference two GAF scores was not reversible error); *Detwiler v. Colvin*, Civ. A. No. 12-214, 2013 WL 5372875, *10 (W.D. Pa. Sept 24, 2013) (declining to remand when the ALJ did not include a GAF score in the discussion). The ALJ's failure to mention the GAF score assessed by Dr. Lewis does not constitute a reversible error. The Court declines the invitation to remand so that the ALJ may insert a GAF score into the decision. *See Coy v. Astrue*, Civ. A. No. 8-1372, 2009 WL 2043491, *14 (W.D. Pa. July 8, 2009). The ALJ did not err by omitting the aforementioned GAF score from his discussion.

## VI.     CONCLUSION

Based upon the foregoing, the Court finds that the ALJ's decision was supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted; and the decision of the ALJ will be affirmed. Appropriate orders follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record